THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEPHEN J. HAUSKNECHT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FRONTLINE MANAGEMENT LLC, a Washington Corporation, and JILL BLANKENSHIP, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:22-cv-652-DAK-JCB<br><br>District Judge Dale A. Kimball |

This matter is before the court on Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint. Specifically, Defendants seek dismissal of Plaintiff's Fifth Cause of Action (intentional infliction of emotional distress), Sixth Cause of Action, (negligent infliction of emotional distress), and Seventh Cause of Action (wage claim).[1] On August 1, 2023, the court held a hearing on the motion. At the hearing, Lisa R. Petersen represented Plaintiff Stephen J. Hausknecht (Mr. Hausknecht), and Lauren Forsyth represented Defendants Frontline Management LLC ("Frontline") and Jill Blankenship ("Ms. Blankenship") (collectively, "Defendants"). At the conclusion of the hearing, the court took the motion under advisement. The court has carefully considered the memoranda filed by the parties, the arguments made by counsel at the hearing, and the law and facts pertaining to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order denying Defendants' Partial Motion to Dismiss.

---

[1] Plaintiff has agreed to dismiss the Seventh Cause of Action.

1

## BACKGROUND[2]

Frontline hired Mr. Hausknecht as Director of Human Resources on March 3, 2019. At the time, Ms. Blankenship was the CEO of Frontline. In May of 2021, Mr. Hausknecht and his boss, Ms. Blankenship, traveled to Mexico with a group of people for a working vacation. They both worked remotely for Frontline during the trip.

During a group dinner on May 19, 2021, Ms. Blankenship was visibly intoxicated, having consumed alcohol prior to and during dinner. Ms. Blankenship became "belligerent," which caused Mr. Hausknecht and two other members of the group to leave the room out of discomfort with Ms. Blankenship's conduct. Later, Mr. Hausknecht re-entered the room and returned to his seat at the table next to Ms. Blankenship. Ms. Blankenship began discussing her past sexual experiences and propositioning Mr. Hausknecht to kiss her, despite knowing that Mr. Hausknecht is a gay man. Mr. Hausknecht, not knowing how to respond, obliged and gave her a quick kiss. Ms. Blankenship then said: "give me another kiss," and leaned over. Mr. Hausknecht, still feeling uncomfortable, but trying to diffuse the situation, jokingly stated: "not if you use your tongue," and gave her another quick kiss.

Ms. Blankenship then reached over and started rubbing Mr. Hausknecht's genitals. Ms. Blankenship then asked Mr. Hausknecht if he wanted a "hand job" or a "head job." She stated that she was "really good" at them and announced that is the reason she has been called the "head meister." Mr. Hausknecht was stunned and taken aback, and basically froze. Ms. Blankenship's advances and physical contact with Mr. Hausknecht were unwanted and unwelcome. Mr. Hausknecht verbally rejected her advances and physical contact, saying "no."

---

[2] The following allegations are drawn from the First Amended Complaint and are assumed to be true for the purposes of the instant Motion for Partial Dismissal.

He moved away from her and leaned forward against the table. Shortly thereafter, Ms. Blankenship again began to rub Mr. Hausknecht's genitals again, despite his express rejection and request to stop. While rubbing Mr. Hausknecht's genitals, Ms. Blankenship stated that she wanted to see if she could get him aroused. She said that she wanted to see "how hard she could get him so she could mount him."

Mr. Hausknecht then stood up from the table, stating that he needed to use the restroom. He went into the restroom attached to his bedroom and locked his bedroom door. Mr. Hausknecht felt sick, panicked, and trapped by and from Ms. Blankenship's behavior. He became physically ill and was required to use the toilet. Since the events of May 19, 2021, Mr. Hausknecht has had to seek counseling for the severe emotional distress caused by Ms. Blankenship's sexual assault, resulting in a diagnosis of Generalized Anxiety at a very high level, a condition that persists to this day and for which he continues to receive counseling and treatment.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan–Arapahoe, LLP v. Bd. of County Comm's of Cty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011); *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996). A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. A complaint does not need to provide "detailed factual allegations;" rather, it must only state enough factual detail to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). Under this standard, a claim need not be probable, but simply must show more than a "mere possibility" of wrongdoing. *Iqbal*, 556 U.S. at 679.

## DISCUSSION

The court finds that Plaintiff has alleged sufficient facts to state a claim for Intentional Infliction of Emotional Distress ("IIED").

To establish a prima facie case for IIED under Utah law, the plaintiff must show that:

> (i) the defendant's conduct was outrageous and intolerable in that it offended the generally accepted standards of decency and morality; (ii) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) the plaintiff suffered severe emotional distress; and (iv) the defendant's conduct proximately caused the plaintiff's emotional distress.

*James v. Frank's Westates Servs., Inc.*, 747 F. Supp. 2d 1264, 1277 (D. Utah 2010) (citation omitted). The factual allegations state a plausible claim for IIED. Plaintiff's Complaint explicitly describes Plaintiff's boss asking him to kiss her, touching his genitals, making sexual comments to him, all despite his objections and knowing that he is a gay man. A reasonable jury could find that the factual allegations amount to outrageous conduct that would offend the generally accepted standards of decency and morality.

Regarding the intent element of IIED, Plaintiff went beyond mere "labels and conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), by alleging that Defendant Blankenship's conduct was unwelcome and unwanted, that he plainly rejected her propositions and sexual advances and told her "no," and that her behavior continued even after he tried to

move away from her and plainly rejected her. Mr. Hausknecht also alleges that Ms. Blankenship knew that he is a gay man and that he verbally reiterated that fact to her when he rejected her sexual advances. Such facts sufficiently allege that Ms. Blankenship acted with the requisite intent, or at the very least, acted with reckless disregard for causing distress and emotional pain to Mr. Hausknecht.

Similarly, as to Mr. Hausknecht's claim for Negligent Infliction of Emotional Distress ("NIED"), the court finds that Plaintiff has alleged sufficient facts. To state a prima facie case for NIED under Utah law, a plaintiff must show that a defendant is liable for illness or bodily harm resulting from unintentional emotional distress when the defendant:

> (a) should have realized that his [or her] conduct involved an unreasonable risk of causing the distress . . . and (b) from facts known to him [or her,] should have realized that the distress, if it were caused, might result in illness or bodily harm.

*Carlton v. Brown*, 2014 UT 6, ¶ 56, 323 P.3d 571.

For the same reasons discussed above pertaining to the IIED claim, the court finds that Mr. Hausknecht has alleged facts sufficient to allow the court to draw the reasonable inference that Ms. Blankenship should have realized that her conduct involved unreasonable risk of causing Mr. Hausknecht distress. Specifically, he alleged that Ms. Blankenship was Plaintiff's boss, she was aware that Plaintiff is gay, and he explicitly and verbally rejected Defendant Blankenship's sexual advances, which she made in front of Plaintiff's co-workers. A reasonable jury could conclude that Defendant should have realized that her conduct involved an unreasonable risk of causing the distress, and she should have realized that the distress, if it were caused, might result in illness or bodily harm.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 21] is DENIED.

Dated this 11th day of September 2023.

BY THE COURT:

Dale A. Kimball
United State District Judge